May it please the court, my name is Russell Pritchett and I am here as attorney for the petitioner Gurpreet Singh and this case involves Mr. Singh's attempt to rescind an in absentia deportation order so that he may present to the US government for the first time an application for asylum. All of the important dates in this case precede September 30, 1996 effective date of the Illegal Immigration Reform and Immigrant Responsibility Act. Therefore former section 241 of the Immigration and Nationality Act governs who may be a deportable alien in this case. Section 241A provides that any alien in the upon order of the Attorney General deported if he's in one of the enumerated classes of deportable aliens. In this case Mr. Singh entered the United States in October of 1995. He was apprehended, he was placed in deportation proceedings as an alien present without inspection. He was released on bond and he promptly left the United States and went to Canada a couple of months later in December 1995. And I take it that didn't work out so well in terms of getting the equivalent of asylum up in Canada. That's I frankly I do not know whether what the outcome was there but that's certainly the implication that that he later returned to the US. Very shortly after he went to Canada on for April 17 1996 in San Francisco. Mr. Singh who was in Canada at that time did not appear and was ordered deported in absentia by the immigration judge. And we would submit that the language under 241A is clear and that the judge's action was without jurisdiction. How do we know he was in Canada? There are two things in the record Judge Clifton. One is his own declaration at it's in the record at 128. The other is a Citizenship and Immigration Canada form in the record at page 140 stamped in February 1996 scheduling him for an I believe those are the only two items on the record that do show he was in Canada. What I'm trying to understand that he had moved his case to San Francisco office is that right? That's correct. And he gave them an address? Yes. Did he ever give them a change of address? I couldn't find anything in there that said he had ever said this is not my address any longer. I believe there's nothing in the record that shows that he gave after he moved to Canada any change of address to show that he brought this on himself. He was in Canada. They sent the the he knew there was going to be a proceeding he'd been served personally with an order to show cause. That's true. They sent the notice of the hearing to his last known address and of course they had every reason to believe he was there and he wasn't because of his own volition so how can he complain about not receiving that notice? I think there's two issues here your honor. One of them is that and it's somewhat technical but that the the notice of the hearing was not addressed to Mr. Singh it was addressed to Mr. Oying. Now that's technical but the statute does require that it be sent to his last address and whether that interfered with his actually receiving that notice from some later person I do not know but the other point here is that it's the government's burden. But it was signed for wasn't it? It was signed for by by someone. And that person presumably wasn't Mr. Oying or whatever. No and it wasn't Mr. Singh but it may be that that person could not appreciate that Mr. Oying that Mr. Singh was the intended Mr. Oying. It had the first name is Gurpree. Well yes not exactly an everyday name in this part of the world. No although for a person from the Punjab it's quite a common name. But here though the other point is that the government has the burden to establish by clear unequivocal and convincing evidence that written notice was properly addressed to him and also that he was deportable. The government had the burden of proving that he was deportable. And part of our submission here is that someone who is outside the United States just as the BIA held in another unreported decision the O. Fock Dian case that we quoted in the brief that if the person's gone the judge has no jurisdiction because there's no one to deport he is not deportable. Now this invites memories of children's games with tag you're it no I'm touching the base I'm holding the fence I'm someplace safe you can't get me. Is there ultimately any logic to saying that somebody who's a respondent in an immigration removal proceeding should be allowed to escape the jurisdiction of a court by jumping across the line and then be allowed to jump back later as convenience and make the government start all over again? Your Honor I think they're what you're discussing in essence is the Brown case which the government relied on here where the person did return while the proceeding was still going on. And there in the Brown case they said that they did still have jurisdiction and did not lose jurisdiction because the operative facts still applied to that person. I believe here there's also the issue pointed out in our brief that the order to show cause implies to on a fair reading that a person who leaves the United States would not be subject to deportation in absentia. And that's one of the points that we make more under a due process argument here. But I do believe particularly... I have to tell you I don't see the language in the order to show cause that makes that point. So if that's important to you maybe we should pause to see what you think it is. There's a section saying if you're ordered deported if you are ordered deported in your absence and it gives us all sorts of things and I don't see anything there to suggest but if you leave the country before then you're Well the order to show cause says that he would not be subject to deportation proceedings as he would be neither in nor attempting that if he were to suggest I believe that because it says that he is in or remaining in the United States that he is subject to the order to show cause. I think that suggests that if he leaves that he would not be subject to that. And I realize I did not request to reserve time at the beginning but I wonder if I might reserve my last approximately two minutes. Sure. Thank you. We'll hear from the attorney general. The agency's decision in this case should be affirmed in the petition for it to be denied as the agency properly concluded that the petitioner's decision to leave the United States without informing the former president of the  immigration court that he was leaving the country or changing his address. But that did not divest the immigration judge of jurisdiction to enter the in absentia order of removal. Would it have mattered if he'd given them notice? I don't believe it would have. I think it is a it sort of goes more to the clean hands aspect of it. This is a person who was essentially claiming after having He's claiming two things not just that he didn't get notice but let's just say I assume he's claiming even if I got notice if I was out of the country the statutes don't let me get deported in absentia. I believe that's his argument. Yes. Yes. But the issue of the court's jurisdiction that is not something that is dependent on whether the alien is in or is outside of the country. I think it's important with respect to the argument petitioner has made. And as pointed out we're dealing with prior statutes. We're dealing with former INA 242 241 or they were similarly numbered 1251 and 1252. And the in absentia requirement to enter an order of depredation in absentia the alien has to have been provided with notice. And then it has to be shown that the alien was provided with notice and is deportable. Deportability under the former INA from a version of the INA is not a question of presence in the United States without inspection. It's a question of entry without inspection. And here is a person who entered the United States without inspection. And I think you look at the language of the deportability provision, the quote from the NTA, sorry, the order to show cause. The charging document states that charges him of being an alien who entered the United States without inspection. Did IRIRA change this presence but not entry requirement? It changed a lot of things with respect to entry. But I think if you look at the sort of current analog of the former provision, I think it does include the under former INA 242, I'm sorry, 241, A1B, it lists the classes of deportable aliens. And it states that any alien who entered the United States without inspection, and then I'm skipping a part which I will talk about later, any alien who entered the United States without inspection is deportable. It's a question of did the alien enter the United States, not is the alien present in the United States. So when he leaves the country I don't hear Petitioner's argument as to be that he wouldn't be subject to deportation or couldn't be cited now. The argument as I understand it is that if he wasn't there at the time the proceedings went forward, he is not at that moment deportable because he's not inside the country. Well, I think that goes It's true at that point he couldn't be deported by the United States, could he? That's true in the same way that it's a, for example, a judgment against a civil defendant in a foreign country. You might not be able to collect on that or execute that judgment. It doesn't mean that the court lacked jurisdiction to enter it. The question of deportability is not just a question of whether or not the alien can physically be picked up and taken out of the country. It's whether the alien falls within the classes of deportable aliens. So, for example, an alien who's been convicted of an aggravated felony and leaves the country is still an alien who has been convicted of an aggravated felony. And for purposes of that deportability provision is an alien who is deportable or, to use the language of the statute, is within one of the classes of deportable aliens. The jurisdiction actually attaches at the time of the charging document, is that correct? Correct. The filing of the order to show cause in the immigration court is the event that establishes the court's jurisdiction. Obviously, that order to show cause also has to be served on the petitioner. But once jurisdiction is established, there's really no reason to say that the court is divested of jurisdiction because the alien leaves the country. Let me ask you another question that has been troubling me, and that has to do with the scope of the BIA's decision. It seems that the BIA didn't really use Section 1251, didn't cite that, although the briefing is focused on that. And we're a little cautious, as you might imagine, after Ventura to make sure we don't decide a case on a ground not actually put forth by the BIA. Of course. So my question is, since the BIA didn't even cite 1251, which seems to be the scope of the government's position, what do we do with that? Well, I believe, let me first say, I think it would be very different if we were arguing, if we were attending a Chevron deference in arguing in favor of our construction of the statute. The Board did not specifically address the language of the statute. But that does not mean the Board didn't recognize the petitioner's argument and reject it. The Board is not required to write, you know, a lengthy explanation of its reasoning. As long as the Board's ultimate decision, which is that it lacked jurisdiction, is correct, I believe this Court can affirm on that basis. That is exactly what the Board held, is that the Court, I'm sorry, that the immigration judge retained jurisdiction. Excuse me. But that is what the Board decided. And the fact that the Board chose not to address every argument in the petitioner's brief doesn't mean it didn't address that issue. This isn't a Ventura problem, I don't believe. Again, I think it would be harder for me to come in and say the Court should give Chevron deference to what I'm saying about 241 right now. I'm not making that argument. But again, I don't believe we're dealing with a Ventura issue here. Thank you. Usually we find ourselves arguing the other side of things. I know. That's why I thought I would ask. Yes, yes. I would like to point out as to the question as to the petitioner's name in the documents that were mailed. It is a single letter and the last name has changed. The first name is correct. The alien identification number is the same. But more importantly, if you look at the return receipt, what's actually on the envelope, the envelope is correctly addressed. It's addressed to Mr. Singh, S-I-N-G-H. And that's page 80 of the administrative record. It is served properly on him. The notice itself may have a typo on it, but the document itself is served properly. And again, the notice is clearly directed to Mr. Singh, S-I-N-G-H. It has the alien identification number correct. And so I don't believe there's an issue as to this is somehow an improper notice. And again, as to that notice issue, it obviously is the petitioner's obligation to provide the immigration court with the correct address where he is. He failed to do so. And that is the reason why this whole thing happened. And I believe that is the sort of in terms of the equities of the case, that is a very relevant point. If he had given his address as Vancouver, British Columbia, would the INS or its successor take the same position? I don't represent ICE, so I can't speak. I believe that oftentimes in that type of situation, hey, the alien has left the country, oftentimes what ICE would do, I don't speak for them, but I believe what happens is they would simply choose to terminate proceedings. And oftentimes that's the most administratively efficient thing to do. But again, I don't speak for ICE. As far as they knew, he was here. He had been served, they thought, and he just failed to appear at his hearing. It's like a default judgment. Yes, yes. And they had no way of knowing that he had left the country. And I mean, he in fact had conceded deportability in the motion to change venue. He said, yes, I am deportable, I concede the issue. That's page 87 of the administrative record. Excuse me, 88 of the administrative record. The respondent admits the allegations in the order to show cause and concedes deportability. So he conceded deportability and had not informed the immigration court that he was leaving the country. And so yes, and indeed the statute, the language of the in absentia statute, as both the current statute and the former one, it's not an optional thing for the immigration judge to enter the in absentia order. It states that the immigration judge shall order an alien deported in absentia if the service establishes by convincing evidence that the alien was given notice of the hearing and is deportable. It's not an optional thing. I notice my time is almost up. So, again, I would urge the court to deny the petition for review. Thank you. Mr. Pritchett. Thank you. As Your Honor referred, we did ask in our brief for this case to be remanded under the Sagaik doc case because there really is no indication here that the BIA considered the statutory argument. Instead, in finding jurisdiction, they just referred to an old case that really was not applicable, the Brown case. Brown does discuss quite directly 1251, doesn't it? I believe it does not. I could be wrong about that. But there is a prior analogous case of this court, the Golzar-Singh case cited in my brief, which is different because it dealt with a notice to appear being sent to the last known address rather than a notice of hearing. But in that case, the Ninth Circuit said, they quoted the statute, they said, however, Section 305A states each alien required to be registered under this chapter who is within the United States shall notify the Attorney General in writing of the change of address. And then this court said the plain language of that statute indicates the address requirement applies only so long as the alien is within the United States. Since Singh left the U.S. altogether in May of 1988, Section 1305A did not apply to him. Now, this is a different scenario where it was a notice to appear in a different statute, but we have virtually the same language and the interpretation by this when a statute applies only to someone within the U.S., it only applies, quote, so long as the alien is within the United States. And I think that's the reasoning used by the other panel of the BIA in the OFAC Dian case. I see my time is up. That's, of course, a non-presidential case. It is. We can't do much with that. No. But I would submit the reasoning in that case is as persuasive as the reasoning in the case before this court from the BIA, which is also non-presidential. Thank you. Thank you very much. Thank both the counsel for argument this morning. The case of Singh v. Holder is submitted.
judges: Rakoff, McKeown, Clifton